UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINETTE JOHNSON O/B/O
T.C.M.J., a minor,

                            Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.

_____/

Case No. 18-10927

Lauri J. Michelson
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 15)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On March 21, 2018, plaintiff, mother of T.C.M.J., a minor child, filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Laurie J. Michelson referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for supplemental security income childhood disability benefits.  (Dkt. 2).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 11, 15).

B.    Administrative Proceedings

Plaintiff filed an application for supplemental security income childhood disability benefits on September 10, 2015, on behalf of her minor child, T.C.M.J., alleging disability beginning on August 3, 2015.  (Tr. 14).[1]  The claim was initially disapproved by the Commissioner on March 11, 2016.  (*Id.*).  Plaintiff requested a hearing and on March 10, 2017, plaintiff appeared, without counsel,[2] and testified on behalf of her minor child before Administrative Law Judge ("ALJ") Allison Dietz, who considered the case *de novo*.  (Tr. 14-27).  In a decision dated July 5, 2017, the ALJ found that T.C.M.J. was not disabled.  (Tr. 27).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 20, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

[2] The ALJ notes that plaintiff was informed of the right to representation but chose to appear and testify without the assistance of an attorney or other representative.  (Tr. 14).

## II.    ALJ FINDINGS

The claimant, T.C.M.J., born August 3, 2015, was a newborn/young infant on September 10, 2015, the date the application was filed and is currently a toddler.  (Tr. 17).  The claim for disability on T.C.M.J.'s behalf is based on exposure affecting fetus, adaptive physical development, and that she was born premature.  (Tr. 52).

At Step I of the three-step sequential evaluation process, the ALJ found that T.C.M.J. had not engaged in substantial gainful activity since September 10, 2015, the application date.  (*Id.*).   At Step II, the ALJ found that the claimant had adaptive self-help and physical development delays and exposure affecting fetus, which she found to be severe impairments that caused more than minimal functional limitations.  (*Id.*)  At Step III, the ALJ found that T.C.M.J. did not have an impairment or combination of impairments that met or medically equaled the Listings or that functionally equaled the Listings.  (Tr. 18).  In denying the claim, the ALJ evaluated T.C.M.J.'s degree of limitation in each of the six functional equivalence domains and concluded that she did not have "marked" or "extreme" limitations in any of the six broad functional domains and thus did not functionally equal a listed impairment.  (Tr. 20-27).  The ALJ thus determined that T.C.M.J. was not disabled since September 10, 2015, the date the application was filed.  (Tr. 27).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If a claimant finds no relief during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Legal Standards – Eligibility for SSI Childhood Disability Benefits

A child will be considered disabled if the child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(I).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three-step sequential evaluation process:

> 1.  A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2.  A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.
>
> 3.  A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment.  20 C.F.R. § 416.926a(a).  The SSA will consider how a child functions in six domains:

1.    Acquiring and using information;

2.    Attending and completing tasks;

3.      Interacting and relating with others;

4.      Moving about and manipulating objects;

5.      Caring for yourself; and

6.      Heath and physical-being.

20 C.F.R. § 416.926a(b)(1).  If a child's impairments result in "marked" limitations

in two domains, or an "extreme" limitation in one domain,[1] the impairment

functionally equals the listing and the child will be found disabled.  20 C.F.R. §

416.926a(d).

C.      <u>Analysis and Conclusions</u>

1.      Functional Equivalence

Plaintiff does not appear to object to the ALJ's conclusion that the

claimant's impairments did not meet or medically equal the Listings.  Rather, the

appeal is related to the ALJ's assessment of whether the claimant's impairments

functionally equaled an impairment in the Listings,  as assessed under the six

domains found in 20 C.F.R. § 416.926a(a).  T.C.M.J. must show that the ALJ's

decision that she suffered from less than marked limitations in two of the six

domains is not supported by substantial evidence, or that the ALJ's decision that

---

[1] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

claimant's limitations in one of the six domains was not extreme is not supported by the substantial evidence.  Here, plaintiff only objects to the ALJ's decision regarding three of the six domains: (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others.  (Dkt. 11).

### a.   Acquiring and Using Information

This domain considers how well a child acquires or learns information, and how well the child uses the information learned.  20 C.F.R. § 416.926a(g).[3]  The regulations provide that a newborn or young infant (birth to age 1) without an impairment should show interest in, and explore, her environment.  At first, her actions are random; for example, when she accidentally touches the mobile over her crib.  Eventually, her actions should become deliberate and purposeful, as when she shakes noisemaking toys like a bell or rattle.  She should begin to recognize, and then anticipate, routine situations and events, as when she grins with expectation at the sight of her stroller.  She should also recognize and gradually attach meaning to everyday sounds, as when she hears the telephone or her name.  Eventually, she should recognize and respond to familiar words, including family names and what her favorite toys and activities are called.

---

[3] As effective on March 27, 2017.

The regulations provide that older infants and toddlers (age 1 to age 3) without an impairment should be learning about the world around them.  When an older infant or toddler plays, she should learn how objects go together in different ways.  She should learn that by pretending, her actions can represent real things. This helps her understand that words represent things, and that words are simply symbols or names for toys, people, places, and activities. She should refer to herself and things around her by pointing and eventually by naming.  She should form concepts and solve simple problems through purposeful experimentation (e.g., taking toys apart), imitation, constructive play (e.g., building with blocks), and pretend play activities.  She should begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions.

20 C.F.R. § 416.926a(g)(3) gives some examples of limited functioning in this domain that children of different ages might have.  The examples are not age-specific; rather, they cover a range of ages and developmental periods.  In addition, as the ALJ acknowledged, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in attending and completing tasks are: (i) does not demonstrate understanding of words about space, size, or time (e.g. in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important

things she learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; and (v) talks only in short, simple sentences and has difficulty explaining what she means.  20 C.F.R. § 416.926a(g)(3).

Plaintiff asserts that T.C.M.J.'s impairments are functionally equivalent to a Listing in this domain and the ALJ erred in concluding otherwise.  T.C.M.J. has difficulties with speech and appropriate use of language and has been diagnosed with delayed speech.  Plaintiff states that T.C.M.J. cannot respond to increasingly complex instructions and questions and cannot produce an increasing number of words and grammatically correct simple sentences.  (Dkt. 11, at p. 7).

The Commissioner disagrees.  According to the Commissioner, substantial evidence supports the ALJ's finding that T.C.M.J. has less than marked limitation in this domain.  (Dkt. 15, at p. 9).  The Commissioner points to various medical and program records which show T.C.M.J.'s ability to communicate with words and with gestures, her ability to solve problems such as tipping a bottle upside down to get a Cheerio out, and her teachers' record noting the ability to explore objects using different senses, explore technology devices, and repeating an action to reach a desired result.  (*Id.* at p. 9-12).

In the view of the undersigned, the ALJ's decision here is supported by substantial evidence.  T.C.M.J.'s pediatrician's records show appropriate

development in this domain as she grew older.  For example, at two months she was described as a healthy two-month old infant (Tr. 200) and at her six-month check-up, her pediatrician Dr. Al-Ado noted in a language development check that she imitated razzing noise, vocalized with vowel sounds and single consonant babbling, and gestured to indicate wants.  (Tr. 217).  She again saw Dr. Al-Ado on September 15, 2016, when she was about 13 months old.  At this visit Dr. Al-Ado noted that T.C.M.J. imitated vocalizations and vocalized to indicate wants, she was able to say "mama" and "dada" and 1-3 other words, she pointed to indicated wants, she recognized her own name and the names of family members, and she understood "no" and "bye."  (Tr. 267).  By February 2017, at about 18 months old, she was vocalizing to indicate wants and was speaking 15-20 words.  Dr. Al-Ado stated that there was no concern about her speech.  (Tr. 265).  She was also interested in age appropriate toys and would listen to a story and look at pictures. (*Id.*).

Some of this communication development is also apparent in T.C.M.J.'s River Rouge Head Start Program Ages and States Questionnaires ("ASQ").  These questionnaires rated T.C.M.J.'s abilities or development in communication, gross and fine motor skills, problem solving, and personal-social skills.  T.C.M.J. scored "satisfactorily" in all areas of the screening in her 14-month ASQ.  (Tr. 290). Pertinent to this domain, in communication T.C.M.J. was able to say 4 or more

words in addition to "mama" and "dada" and she could go into another room to get a familiar toy or object if asked to.  (Tr. 285).  Overall, her scores in this ASQ indicated that T.C.M.J.'s development was "on schedule."  (Tr. 289).  She was still noted as "on schedule" in communication in her 16-month ASQ, but the evaluator noted that T.C.M.J. may need a professional assessment with regard to her problem-solving and fine motor skills.  (Tr. 296).  At the 16-month ASQ, T.C.M.J. was not drawing a line down a piece of paper after watching someone else do the same but would sometimes tip over a bottle to get a crumb or cheerio out of it and would sometimes drop several toys into a bowl or box.  (Tr. 293-94).  Her 18-month questionnaire, completed on February 14, 2017, is in some respects contradictory to Dr. Al-Ado's assessment.  For example, Dr. Al-Ado indicated that T.C.M.J. could speak 15-20 words while in the ASQ, T.C.M.J.'s mother indicated that she could not speak 8 or more words and could not imitate a 2-word sentence. (Tr. 310).  However, the ASQ noted that T.C.M.J. could point to things she wants and could go into another room to get a familiar toy or object.  (*Id.*).  These records do not support marked limitation in this domain.

By the time T.C.M.J. reached 20-months of age, the record indicates that she may have had some limitation in her vocabulary and ability to speak in simple sentences.  Her 20-month ASQ completed April 10, 2017, indicated that T.C.M.J. was in the cut-off and may need professional assessment in her communication and

fine motor skills but could use learning activities to help with her problem-solving.

(Tr. 321).  However, by this age T.C.M.J. was attempting to solve problems

through persistent action, was imitating others and engaging in constructive play

(e.g. building with blocks).  According to the 20-month ASQ, T.C.M.J. was using a

chair or box to get items she could not reach, she sometimes would turn objects

right-side up and copied gestures (such as wiping, sweeping), and she would

scribble back and forth on paper without first being shown.  (Tr. 319).  Two of

T.C.M.J.'s teachers at the Early On program provided a Developmental Profile for

T.C.M.J. dated May 9, 2017 (T.C.M.J. was not yet two years old at this time).

These teachers observed T.C.M.J. between December 2016 and March 2017.  This

profile provides further support for ALJ's decision, despite any inconsistencies

between the ASQs and pediatrician records.  For example, in evaluating T.C.M.J.'s

"Approaches to Learning," the teachers noted that she moved with persistence until

she reached a desired object or person.  She would repeat an action, even when it

was not working, to solve a problem.  She would return to where an object she

wanted was located.  (Tr. 329).  With regard to her communication skills, she was

able to say or sign a single word to refer to a person, animal, or object and would

respond non-verbally to simple statements or requests.  (*Id.*).  The teachers noted

that T.C.M.J. would move herself or objects in response to simple position or

direction words, indicating that she understood words about space.  Finally, the

teachers indicated that T.C.M.J. explored objects using different senses, could perform an action on an object, would pick up, examine, or use a natural object or material, and explored technology devices.  (*Id.*).

The ALJ found that T.C.M.J. has limitation in this domain, but less than marked limitation.  (Tr. 21).  This finding is supported by the evidence.  While she generally showed normal development pertinent to this domain, T.C.M.J. appears to have some limitation in her vocabulary and ability to make simple sentences. The ALJ noted that T.C.M.J. was unable to copy a teacher after watching the teacher draw a line from the top to the bottom of a piece of paper or imitate lining up objects.  Because the ALJ found T.C.M.J. had some limitation in domain but less than marked limitation, the ALJ gave the State agency physician's opinion little weight because that physician found that T.C.M.J. had no impairment in this domain.

The fact that there is some evidence in support of limitation in this domain does not detract from the substantial evidence supporting the ALJ's decision.   As noted earlier, "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky*, 35 F.3d at 1035.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  The undersigned concludes

that the ALJ's decision that T.C.M.J. has less than marked limitation in acquiring and using information is within the "zone of choice" and is supported by substantial evidence, and thus must be affirmed.  Having a less than marked impairment certainly does not mean that the claimant is unimpaired, but the mere existence of that impairment does not necessarily mean, as plaintiff's argument suggests, that a claimant is "markedly" impaired in a particular domain.

b.      Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities.  20 C.F.R. § 416.926a(h).  The regulations provide that a newborn and young infant (birth to attainment of age 1) should begin at birth to show sensitivity to her environment by responding to various stimuli (e.g., light, touch, temperature, movement).  Very soon, she should be able to fix her gaze on a human face.  She should stop her activity when she hears voices or sounds around her.  Next, she should begin to attend to and follow various moving objects with her gaze, including people or toys.  She should be listening to her family's conversations for longer and longer periods of time.  Eventually, as she is able to move around and explore her environment, she should begin to play with people and toys for longer periods of time.  She will still want to change activities frequently, but her interest

16

in continuing interaction or a game should gradually expand.   20 C.F.R. § 416.926a(h)(2)(i).

The regulations provide that older infants and toddlers (age 1 to attainment of age 3) should be able to attend to things that interest them and have adequate attention to complete some tasks by him or herself. As a toddler, she should demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on her clothes.  20 C.F.R. § 416.926a(h)(2)(ii).

20 C.F.R. § 416.926a(h)(3) sets forth some examples of limited functioning in this domain that children of various ages might exhibit.  The examples cover a range of ages and developmental periods.  In addition, according to the ALJ, the examples do not necessarily describe "marked" or "extreme" limitation in the domain.  Some examples of difficulty children could have in attending and completing tasks are: (i) easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

Plaintiff contends that T.C.M.J. does not fix her gaze on another human face and does not stop her activity when hearing noises. (Dkt. 11, at p. 8). Plaintiff acknowledges that T.C.M.J. responds to her voice, but states that T.C.M.J. does not reach for or respond to others outside her family and cannot stack blocks or imitate her teachers. Thus, she argues, T.C.M.J. has marked limitation in this domain.

The Commissioner counters that plaintiff's allegations lack support in the record. For example, she stated in her brief that T.C.M.J. responds to her mother's voice but does not reach for or respond to others outside her family. However, plaintiff's mother testified at the administrative hearing that T.C.M.J. would not reach out to unfamiliar people to be held, but she did not testify that T.C.M.J. had problems responding to others. (Dkt. 15, at p. 15). The Commissioner also contends that the ALJ's decision is supported by the same evidence that supports less than marked impairment in acquiring and using information. The Commissioner offers as evidence T.C.M.J.'s ability to point to indicate what she wants, to turn towards sounds, to follow instructions to go into another room to get an object, to copy activities she saw, and to use a box or chair to get an object out of reach. (*Id.* at p. 14).

In the view of the undersigned, substantial evidence supports the ALJ's decision. The record indicates that T.C.M.J. does not have problems responding to familiar voices or to sounds, playing with people and with toys, and maintaining

18

adequate attention to complete some tasks.   At two months old T.C.M.J. was described as a healthy infant with development appropriate for her age despite her premature birth.  (Tr. 200).  At six months old she was responding to her mother's affections and sought interaction with others.  (Tr. 217).  At 13 months old she was still seeking interaction with others, enjoyed playing "peek-a-boo," was imitating the play of others, and laughed and smiled at relatives.  (Tr. 267).  She could also recognize her own name and names of family members.  (*Id.*).  At 16 months old she was sometimes helping undress herself by taking off socks, hat, shoes, and mittens, for example.  (Tr. 294).  At 18 months old her pediatrician noted she could build a tower of three or four blocks, sought attention from others, was interested in age-appropriate toys, listened to a story and looked at pictures.  (Tr. 265).  While T.C.M.J. demonstrated some difficulty in problem solving, her problem-solving skills provide support for the ALJ's decision in this domain.  For instance, at 20 months old she would find a box or chair to stand on to reach something out of reach.  (Tr. 319).  She could sometimes copy gestures such as patting her cheek and pulling on her earlobe, would sometimes turn an object right side up, and could copy a person's activities such as wiping up a spill or sweeping.  (*Id.*). Further, in the Developmental Profile dated May 2017 (T.C.M.J. was about 22 months old), her teachers stated that she moved with persistence until reaching a desired object or person, she repeated an action even when it was not working to

solve a problem, and she returned to where something she wanted or had played with is located.  (Tr. 329).  The teachers also noted that she responds (turns, looks, or startles) to sound in her environment.  T.C.M.J. also would initiate physical contact with another person to express an emotion, play and work alongside other children, and participate in part of the daily routine when led by an adult.  (*Id.*).

Citation to T.C.M.J.'s mother's testimony is unavailing.  As the Commissioner points out, Ms. Johnson testified that T.C.M.J. responds to and reaches for familiar people around her, but that T.C.M.J. does not reach for unfamiliar people.  Plaintiff did not testify that T.C.M.J. does not respond to unfamiliar people. (Tr. 60).   In any event, it does not appear that who the child reaches out to or responds to is a pertinent consideration in this domain, or that a toddler who does not reach for unfamiliar people demonstrates marked limitation in this domain.  *See* 20 C.F.R. 416.926a(h)(2)(i-ii).

Again, the ALJ rejected the State agency physician's opinion that T.C.M.J. has no limitation in this area.  Instead, the ALJ noted some limitation in this area because, for example, T.C.M.J. was unable to copy a teacher after watching the teacher draw a line from the top of the paper to the bottom of the paper and was unable to imitate lining up objects.  (Tr. 22).  Nevertheless, the ALJ concluded that T.C.M.J. has less than marked limitation in this domain.  In light of the substantial evidence supporting the ALJ's decision, discussed above, the undersigned finds no

error.  Having a less than marked impairment certainly does not mean that the

claimant is unimpaired, but the mere existence of that impairment does not

necessarily mean, as plaintiff's argument suggests, that a claimant is "markedly"

impaired in a particular domain.

### c.   Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain

emotional connections with others, develop and use the language of the

community, cooperate with others, comply with rules, respond to criticism, and

respect and take care of the possessions of others.  20 C.F.R. § 416.926a(i).  The

regulations provide that a newborn and young infant (birth to attainment of age 1)

should begin to form intimate relationships at birth by gradually responding

visually and vocally to her caregiver(s), through mutual gaze and vocal exchanges,

and by physically molding her body to the caregiver's while being held.  She

should eventually initiate give-and-take games (such as pat-a-cake, peek-a-boo)

with her caregivers, and begin to affect others through her own purposeful

behavior (e.g., gestures and vocalizations).  She should be able to respond to a

variety of emotions (e.g., facial expressions and vocal tone changes).  She should

begin to develop speech by using vowel sounds and later consonants, first alone,

and then in babbling.  20 C.F.R. § 416.926a(i)(2)(i).

The regulation provides that an older infant and toddler (age 1 to attainment of age 3) is dependent upon her caregivers but should begin to separate from them. She should be able to express emotions and respond to the feelings of others. She should begin initiating and maintaining interactions with adults. But, she also should show interest in, then play alongside, and eventually interact with other children her age. Finally, and older infant or toddler should be able to spontaneously communicate her wishes or needs, first by using gestures, and eventually by speaking words clearly enough for people who know her to understand what she says most of the time. 20 C.F.R. § 416.926a(i)(2)(ii).

Social Security regulation 20 C.F.R. § 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. Like the examples in the previously-discussed categories, these examples do not apply to a child of a particular age, but instead cover a range of ages and developmental periods. The examples also do not necessarily describe "marked" or "extreme" limitation in the domain. With the above caveats, examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people she knows, or is overly anxious or fearful of meeting new people; (iv) has difficulty playing games or sports with rules; (v) has difficulty

communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency. (*Id.*)

Plaintiff argues that the evidence, including Ms. Johnson's testimony, shows that T.C.M.J. has a difficult time interacting and relating with others. (Dkt. 11, at p. 8). Plaintiff (incorrectly) states that Ms. Johnson testified that T.C.M.J. responds to her but does not acknowledge other speakers and does not reach for familiar people. (*Id.*). She also states that T.C.M.J.'s teachers acknowledged that she does not talk like other toddlers her age and continues to need interventions to keep her on track.

The Commissioner disagrees, maintaining that the ALJ's decision is supported by substantial evidence. For example, the record indicates that T.C.M.J. is able to indicate her needs with words or by pointing, and at 20 months old she was able to understand and carry out different verbal directions without being given clues. (Dkt. 15, at p. 17). Further, Dr. Al-Ado noted no problems with language or social development and her teachers do not note any problems in this domain. (*Id.* at p. 17-18).

In the view of the undersigned, substantial evidence supports the ALJ's decision on this domain. Based on the record, T.C.M.J. responds to and interacts with caregivers and children around her in age-appropriate ways. For example, Dr.

Al-Ado noted no problems with her language and social development from six months of age through thirteen months.  (Tr. 217, 265, 167).  Dr. Al-Ado specifically stated that there were no concerns about speech in February 2017 and further observed that T.C.M.J. spoke 15-20 words, sought interaction with others, enjoyed social play, showed affection, and vocalized to indicate wants.  (Tr. 265).  Before that, at thirteen months old, T.C.M.J. laughed and smiled at relatives, enjoyed playing peek-a-boo and imitated the play of others.  (Tr. 267).  Further, T.C.M.J.'s teachers noted that she would initiate physical contact with another person to express an emotion; she would look at, smile at, vocalize to, or make faces at a primary caregiver; and she played and worked alongside other children.  (Tr. 329).  Until her 20-month ASQ, her ASQs consistently revealed that her personal-social skills were "on schedule" developmentally.  (Tr. 283, 289, 296, 303, 315).  In the 20-month ASQ, she was close to the cut-off in the personal-social area.  (Tr. 321).  Within the personal-social area, T.C.M.J.'s mother indicated that she could feed herself with a spoon, she could get her mother's attention by pulling on her hand or clothes, and she could copy the activities her mother would do, such as wipe up a spill, sweep, or comb her hair.  (Tr. 319).  However, she could only sometimes pretend to rock or feed a doll and only sometimes would eat with a fork.  (Tr. 319-20).  T.C.M.J. could not yet drink from a cup or glass.  (Tr. 319).  These conclusions do not undermine the less than

marked limitation assessment in this domain, as the child's ability to use a cup or fork do not appear to be pertinent to the domain.  Additionally, T.C.M.J.'s speech and communication were addressed in detail under "acquiring and using information," a domain in which the undersigned agreed that there was substantial evidence supporting the ALJ's conclusion that T.C.M.J. has less than marked limitation.  In short, while she appears to have some limitation in her ability to communicate with an increasing number of words, there does not appear to be any problem for T.C.M.J. to communicate by pointing or to otherwise indicate what she wants or needs.  While T.C.M.J. may have some limitation, that does not automatically translate into a marked limitation and the ALJ relied on evidence supporting less than marked limitations.  For these reasons, the undersigned finds that the ALJ's decision that T.C.M.J. did not have a marked limitation in this domain is supported by substantial evidence.

        2.    SSR 09-1p

Plaintiff's next argument is that the ALJ did not take into consideration the extensive help that T.C.M.J. requires to get through her day compared to her peers in accordance with SSR 09-1p.  (Dkt. 11, at p. 9).  Plaintiff points to T.C.M.J.'s teachers' indication that she required activities to improve her skills in the area of speech and language.  (*Id.* at p. 10).  She states that "where a child needs repeated

intervention over the course of each day to keep up with her classmates, the ALJ

has not properly considered the extent of her limitations."

It appears to the undersigned that this argument is really an additional

argument that the ALJ's functional equivalence determination is not supported by

substantial evidence.  The ALJ considered the evidence plaintiff cites in support of

this argument – T.C.M.J.'s teachers' Developmental Profile (Tr. 329) –  in addition

to the rest of the record evidence and determined that T.C.M.J. has less than

marked limitation in the six domains of functional equivalence.  As discussed

above, the ALJ's determination is supported by substantial evidence.

Further, plaintiff has not made the case that the ALJ violated SSR 09-1p.

SSR 09-1p provides, in part:

> In general, if a child needs a person, medication,
> treatment, device, or structured, supportive setting to
> make his functioning possible or to improve the
> functioning, the child will not be as independent as same-
> age peers who do not have impairments.  Such a child
> will have a limitation, even if he is functioning well with
> the help or support.
>
> The more help or support of any kind that a child
> receives beyond what would be expected for children the
> same age without impairments, the less independent the
> child is in functioning, and the more severe we will find
> the limitation to be.

SSR 09-1P, *6-*7 (Feb. 17, 2009); *see also* 20 C.F.R. § 416.924a(b).  Here, the

ALJ expressly acknowledged the obligation to evaluate the "whole child" in

making findings regarding functional equivalence.  (Tr. 18).  The undersigned has

reviewed the record and the ALJ's decision.  It is not at all clear from the record

that T.C.M.J. requires "repeated intervention" every day to keep up with her

classmates.  The evidence discussed above suggests that, while T.C.M.J. has some

problems with communication and vocabulary, she otherwise interacts well with

others and can communicate her wants and needs.  And, although plaintiff cites to

and apparently quotes the teachers' profile stating that T.C.M.J. required activities

to improve her speech and language skills, on review of the profile it does not

appear that the teachers said anything of the sort.  Rather, in evaluating T.C.M.J.'s

language and communication, they stated that she could indicate a person, animal,

object, or action; she responded nonverbally to simple statements or requests; she

responded to sound in the environment; she points to familiar objects in pictures;

and turns pages of a book.  (Tr. 329).

To the extent plaintiff is arguing that the ALJ should have discussed every

bit of the profile, the argument is unavailing.  It is well-settled that an ALJ may

consider all the evidence without discussing every piece of evidence in the

decision.  *Kornecky*, 167 Fed. Appx. at 508 ("[a]n ALJ can consider all the

evidence without directly addressing in his written decision every piece of

evidence submitted by a party.") (internal citation marks omitted).  And, as

discussed above, the ALJ's decision that T.C.M.J. has less than marked impairment in the three contested domains is supported by substantial evidence. For these reasons, the undersigned finds no error here.

### 3. Consideration of Johnson's Testimony

Plaintiff's final argument is that the ALJ failed to address T.C.M.J.'s mother's testimony regarding T.C.M.J.'s delays beyond a cursory statement.  (Dkt. 11, at p. 10-11).  She states that the ALJ is required to consider the statements of family members and the record shows that T.C.M.J. can only speak a few words, often falls when she walks, and cannot stack blocks or hold utensils. Further, Ms. Johnson testified that she must look into TCMJ's eyes to understand her and vice versa. She concludes that the ALJ failed to comply with 20 C.F.R. § 404.1527 by not according her testimony adequate weight and not addressing the testimony in detail.

The Commissioner contends that the ALJ did discuss plaintiff's testimony and was not required to do any more than consider her statements.  (Dkt. 15, at p. 20).  The Commissioner maintains that substantial evidence supports the determination that T.C.M.J.'s impairments do not functionally equal any Listing.

Pursuant to 20 C.F.R. § 404.1513(d)(4), the ALJ may use evidence from "[o]ther non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)" to "show the

severity of [a claimant's] impairment(s) and how it affects [his] ability to work."

However, SSR 96-7p (superseded by SSR 16-3p, but not significantly altered)

states that, for an individual under the age of 18 claiming child disability benefits

who is unable to adequately describe her own symptoms, the ALJ will accept as a

statement of the symptoms the description given by a person most familiar with the

child, such as a parent, and will assess the credibility of such statement in

accordance with the regulations.  1996 WL 374186, at *1, n. 2 (July 2, 1996).

"Under these circumstances, the parent's testimony stands in for the child's, and

the ALJ must assess that testimony pursuant to the rules applicable to evaluating a

claimant's credibility."  *Simon on behalf of K.A.W. v. Colvin*, WL 3184481, at *2

(M.D. Tenn. June 22, 2017).  Thus, as T.C.M.J.'s mother, Ms. Johnson's testimony

stands in for the child and the undersigned will address this argument as a

challenge to the ALJ's credibility determination of the claimant.

In the view of the undersigned, there is no compelling reason to disturb the

ALJ's credibility determination and the determination is supported by substantial

evidence.  "Credibility determinations concerning a claimant's subjective

complaints are peculiarly within the province of the ALJ."  *See Gooch v. Sec'y of

Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon review, [the

court must] accord to the ALJ's determinations of credibility great weight and

deference particularly since the ALJ has the opportunity, which [the court] d[oes]

not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, s/he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of impairment are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R. § 416.929. "Consistency between the plaintiff's subjective complaints and the record evidence tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

The ALJ addressed Johnson's hearing testimony, noting that she testified that T.C.M.J. had delayed speech and did not communicate properly. (Tr. 19).

Johnson also testified that T.C.M.J. could communicate through gestures and engage in certain activities such as responding to her name, waving "bye" and playing games like "peek-a-boo."  After considering the record, the ALJ determined that plaintiff's testimony concerning the intensity, persistence, and limiting effects of T.C.M.J.'s medically determinable impairments were not entirely consistent with the medical and other evidence in the record.  (Tr. 19).

There is no compelling reason to disturb this determination.  The undersigned discussed in detail the evidence regarding T.C.M.J.'s impairments. As noted, the evidence does not suggest that T.C.M.J. is disabled or has marked impairment in at least two of the six domains of functional equivalence.  The ALJ also discussed this evidence.  (Tr. 19-26).  Given this evidence, the undersigned agrees that substantial evidence supports the conclusion that plaintiff's claims of disability are not entirely consistent with the evidence.  For instance, while plaintiff testified that T.C.M.J. does not communicate except for gestures, T.C.M.J.'s pediatrician noted that she could speak 15-20 words in addition to "mama" and "dada."  (Tr. 53, 265).  On review of plaintiff's testimony and the record evidence, it appears that some of her testimony is consistent with the record, but this consistency supports the ALJ's decision on functional equivalence.  For example, plaintiff testified that T.C.M.J. is able to indicate wants and needs with gestures (Tr. 52), she is able to hold a fork (Tr. 57), she reaches to be picked up by

familiar people (Tr. 60), and she goes to another location to get a familiar object (Tr. 62). These abilities were addressed above and lend support to the ALJ's decision that T.C.M.J. has less than marked impairment in the six domains. Because the ALJ addressed plaintiff's testimony and supported the disability decision with substantial evidence—which contradicts plaintiff's statements of disability, the undersigned finds no reason to disturb the credibility determination. The fact that the ALJ may not have discussed every piece of plaintiff's testimony does not direct a different result. "[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *See Kornecky v. Comm'r of Sec. Sec.,*167 Fed. Appx. 496, 508 (6th Cir. 2006).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 25, 2019                <u>s/Stephanie Dawkins Davis</u>
Stephanie Dawkins Davis
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 25, 2019,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Tammy Hallwood, Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>
